UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE PRITCHETT,                    : CIVIL NO. **1:06-CV-00265**
                                    :
          Plaintiff                 : (Judge Rambo)
                                    :
     v.                             : (Magistrate Judge Smyser)
                                    :
RICHARD ELLERS and                  :
JOHN SYMONS,                        :
                                    :
          Defendants                :

### REPORT AND RECOMMENDATION

I. Background and Procedural History.

     On February 3, 2006, the plaintiff, a prisoner
proceeding *pro se*, commenced this civil action by filing a
complaint.

     The complaint names as defendants Richard Ellers,
the Health Care Administrator at the State Correctional
Institution at Rockview (SCI-Rockview), and John Symons, a
physician at SCI-Rockview.

     The plaintiff alleges that he has been diagnosed
with papilloma of the larynx, a non-contagious incurable
virus that he inherited at birth.  He alleges that
papilloma is a lifelong, serious and chronic illness for

him, that there are no known forms of medication for the papilloma and that he has to be monitored periodically to ensure that the papilloma does not develop into cancer. The plaintiff alleges that he has had numerous surgeries to control the spread of the papilloma and over the course of those surgeries his voice has deteriorated.

The plaintiff alleges that his surgeon, Dr. Kao, recommended that he not be subject to second hand smoke due to his chronic illness.  He alleges that he has been exposed to environmental tobacco smoke from cellmates who smoked.  He alleges that the defendants have repeatedly denied his requests for a single cell under the Department of Corrections' Z Code policy which makes provision for the designation of inmates to single cell status for various reasons.

The plaintiff alleges that exposure to second hand smoke caused an aggravation of his condition.  He alleges that the defendants continued to deny him a single cell under the Z Code policy.

The plaintiff alleges that on December 14, 2004, he was transferred to the State Correctional Institution at Fayette (SCI-Fayette).  He alleges that SCI-Fayette has the same smoking policy as SCI-Rockview and that the defendants knew before he was transferred that SCI-Fayette is not a non-smoking facility.  The plaintiff alleges that defendant Ellers transferred him to SCI-Fayette as retaliation for him seeking Z Code status from Deputy Superintendents Coffman and Gaertner.  He alleges that after his transfer, he continued to be celled with inmates who smoke and that he was denied Z Code status by staff at SCI-Fayette.

The plaintiff alleges that the defendants' denial of his requests for Z Code status placed his health at serious risk, caused him needless suffering and required him to have to undergo life-threatening surgeries.

The plaintiff claims that the defendants violated the Eighth Amendment by denying him Z Code status.  The plaintiff also claims that the defendants were negligent under state law by denying him Z Code status. Additionally, the plaintiff claims, defendant Ellers transferred him in retaliation because he exercised his

3

right to petition defendant Ellers' superiors for redress of his grievance regarding his need for Z Code status. Although not set forth as a separate cause of action, the plaintiff also mentions the Americans with Disabilities Act (ADA).

As relief, the plaintiff is seeking compensatory and punitive damages as well as injunctive relief.

Although at the time the plaintiff commenced this action he was proceeding *pro se*, the plaintiff is now represented by counsel.

By an Order dated July 13, 2006, the plaintiff's negligence claims against both defendants were dismissed, the plaintiff's ADA claim against defendant Symons was dismissed and the plaintiff's claim for injunctive relief against defendant Symons was dismissed.

On July 24, 2006, defendant Symons filed an answer to the complaint, and on July 26, 2006, defendant Ellers filed an answer to the complaint.

Currently pending is a motion for summary judgment filed by defendant Symons and a motion for summary judgment filed by defendant Ellers.

II. Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the

nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party."  *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law.  *Anderson*, *supra*, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there

6

can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III. Undisputed Facts.

      A. Defendant Ellers' Motion for Summary Judgment.

      The following facts are undisputed for purposes of defendant Ellers' motion for summary judgment.

      Defendant Ellers is the Corrections Health Care Administrator at SCI-Rockview. *Defendant Ellers' Statement of Material Facts at ¶5 and Response of Wayne Pritchett to Ellers' Statement of Undisputed Material Fats at ¶5.* He is an employee of the Department of Corrections. *Id. at ¶6.* His job responsibilities including planning, organizing, directing, administering, and managing health care services for inmates in the treatment of illness, disease and injury. *Id. at ¶7.*

The plaintiff suffers from papilloma of the larynx area. *Id. at* ¶14.  The plaintiff's medical providers recommended that he avoid second hand smoke. *Id. at* ¶15.

There was a no smoking policy at SCI-Rockview. *Id. at* ¶16.  However, the policy was not strictly enforced and inmates did smoke in their cells. *Id.*

In June of 2004, the plaintiff underwent a surgical procedure outside the institution. *Id. at* ¶19.  The surgery was performed by Dr. Kao. *Id.*  After the plaintiff's June 2004 surgery, Dr. Kao recommended that the plaintiff avoid environmental tobacco smoke (ETS). *Id. at* ¶20.  The plaintiff returned to the institution after his June 2004 surgery and was seen by defendant Symons.  *Id. at* ¶21.

In July or August of 2004, defendant Symons informed defendant Ellers that he had seen the plaintiff and that the plaintiff was requesting a single cell or "Z Code" for medical reasons. *Id. at* ¶22.  Defendant Symons also informed defendant Ellers that he intended to deny the

plaintiff's request for a single cell or Z Code because there was no medical justification for it. *Id. at* ¶23.[1]

The determination of whether an inmate should be given a single cell for medical reasons is a clinical decision that must be made by a doctor. *Id. at* ¶24. Because he is not a doctor, defendant Ellers could not write an order for an inmate to be given a single cell or Z Code for medical reasons. *Id. at* ¶25.

During a conversation in July or August of 2004, defendant Symons and defendant Ellers also discussed the recommendation of Dr. Kao that the plaintiff avoid ETS. *Id. at* ¶27. Defendant Symons was concerned that the plaintiff reported that there was smoking on his cell block. *Id. at* ¶28. The defendants discussed what they could do to

---

[1]. We note that the plaintiff has denied many of the facts set forth in the defendants' statements of material fact without citing to the specific parts of the record that support those denials. Under Local Rule 56.1, it is the responsibility of the plaintiff's attorney, to review the record and identify the parts of the record that support the plaintiff's denials.  It is not the court's function to scour the record to attempt to find support for the plaintiff's denials.  The plaintiff's general denials do not satisfy the requirements of Local Rule 56.1.  Where the plaintiff has merely denied a factual statement without pointing to parts of the record to support such a denial, we conclude that the plaintiff has failed to appropriately controvert the defendants' statements of material fact.

resolve this problem. *Id. at* ¶29. Defendant Ellers believed that he had the responsibility to make accommodations for the plaintiff regarding his complaint that he was being subject to ETS. *Id. at* ¶30.

Defendant Ellers contacted Jack Allar, the plaintiff's Unit Manager to discuss the problem. *Id. at* ¶31. Allar informed defendant Ellers that there had been smoking occurring on the unit and that only "repeat offenders" were being disciplined. *Id. at* ¶32. Allar explained that if corrections staff wrote up all violators, there would not be enough cells in the Restrictive Housing Unit to house the violators. *Id. at* ¶33. Allar and defendant Ellers also discussed the plaintiff's cellmate and Allar told defendant Ellers that the plaintiff's cellmate was not a smoker. *Id. at* ¶34.

The plaintiff continued to ask for a single cell. *Id. at* ¶35. A few weeks after he had first contacted Allar, defendant Ellers contacted Allar again and inquired about moving the plaintiff to another cell or housing unit. *Id.* Allar indicated that he had some ideas. *Id.* Allar then spoke to the plaintiff and subsequently informed

defendant Ellers that the plaintiff was not receptive to changing either his cell or his housing unit. *Id. at* ¶36.

Because the plaintiff would not agree to a change in his cell or housing unit, defendant Ellers again consulted with defendant Symons. *Id. at* ¶37.  Defendants Symons and Ellers agreed that transferring the plaintiff to a smoke-free facility would be the best accommodation and resolution of the situation. *Id. at* ¶38.  Defendant Ellers asked Allar to discuss this solution with the plaintiff and Allar did so. *Id. at* ¶39.  Allar then informed defendant Ellers that the plaintiff did not want to be transferred. *Id. at* ¶40.  Allar further told defendant Ellers that the plaintiff was working on a petition to get out of prison and that he wanted the support of Rockview staff. *Id. at* ¶41.

At the time, defendant Ellers was unaware that the plaintiff was serving a life sentence, and he assumed that the reference to the plaintiff's petition to get out of prison meant that the plaintiff was applying for parole. *Id. at* ¶¶ *42 & 44*.  Defendant Ellers contacted Jim Rafetto, a parole supervisor at SCI-Rockview, to inquire about the

plaintiff's parole status. *Id. at* ¶45.  Rafetto informed defendant Ellers that he was not aware of any pending parole matters regarding the plaintiff and that transferring the plaintiff to another facility would not jeopardize the plaintiff's ability to pursue parole. *Id. at* ¶46.  Defendant Ellers, therefore, assumed that a transfer would not impact negatively on the plaintiff's aspiration to get out of prison. *Id. at* ¶47.  It was not until later that defendant Ellers learned that the plaintiff was pursuing a commutation rather than parole. *Id. at* ¶48.

Sometime after his discussions with Allar and Rafetto, defendant Ellers contacted Dr. Fred Maue, M.D., the then Chief of Clinical Services of the Department's Bureau of Health Care Services, and Joan Trees, the Clinical Coordinator of the Bureau of Health Care Services. *Id. at* ¶49.  Defendant Ellers explained the plaintiff's situation to Maue and Trees. *Id. at* ¶50.  Maue and Trees responded that they did not know of a state correctional facility to which they could send the plaintiff, that defendant Ellers should proceed to locate one, and that they would approve a transfer if defendant Ellers found one. *Id. at* ¶51.

12

From his previous experience at the Bureau of
Health Care Services, defendant Ellers was aware that the
State Correctional Institution at Chester (SCI-Chester) and
the State Correctional Institution at Pine Grove (SCI-Pine
Grove) were tobacco-free institutions, meaning that tobacco
is actually considered contraband at those facilities. *Id.
at* ¶52.  In early or mid October of 2004, defendant Ellers
contacted both Shirley Laws-Smith, Corrections Health Care
Administrator at SCI-Chester, which is a drug and alcohol
treatment facility, and Susan Myers, Corrections Health
Care Administrator of SCI-Pine Grove. *Id. at* ¶53.
Defendant Ellers explained the plaintiff's situation to
them and inquired if either of them would be willing to
accept the plaintiff as a transferee. *Id.*  Ms. Laws-Smith
responded that SCI-Chester could not accept the plaintiff
because he did not meet the alcohol or drug programming
criteria. *Id. at* ¶54.   After consulting with her
supervisor, Ms. Myers responded that SCI-Pine Grove could
not accept the plaintiff because of his security level and
sentence. *Id. at* ¶55.

Defendant Ellers also knew that SCI-Fayette had been totally smoke free when it opened but he was uncertain about its current status. *Id. at* ¶56. In approximately early November, defendant Ellers contacted Robert Tretinik, Corrections Health Care Administrator at SCI-Fayette and explained the plaintiff's situation to him. *Id. at* ¶¶ 57 & 58. Tretinik informed defendant Ellers that SCI-Fayette was no longer totally smoke free. *Id. at* ¶59. However, Tretinik also told defendants Ellers that he had a housing unit that was very compliant and that he felt confident that the plaintiff would not be subjected to ETS there. *Id. at* ¶60. Defendant Ellers had known Tretinik since 1996 and had no reason to doubt what Tretinik told him. *Id. at* ¶61. Defendant Ellers gave Tretinik a complete overview of the plaintiff's situation including his repeated requests for medical Z Code status. *Id. at* ¶62. This type of explanation is common practice when an inmate is transferred from one institution to another. *Id. at* ¶63. Tretinik agreed to accept the plaintiff as a transferee. *Id. at* ¶64.

Defendant Ellers then notified defendant Symons, Dr. Gregory Gaertner, Ph.D., the Deputy Superintendent of Centralized Services to whom he then directly reported, and

the Bureau of Health Care Services that Tretinik would
accept the plaintiff as a transferee. *Id. at ¶*65.

On December 12, 2004, at defendant Ellers' request,
Dale Brungard, the Inmate Records Supervisor at SCI-
Rockview, completed the required transfer petition for the
plaintiff. *Id. at ¶*66.  The plaintiff was transferred to
SCI-Fayette on December 14, 2004. *Id. at ¶*67.

B. Defendant Symons' Motion for Summary Judgment.

The following facts are undisputed for purposes of
defendant Symons' motion for summary judgment.

The plaintiff was incarcerated at SCI-Rockview
until December 14, 2004. *Defendant Symons' Concise
Statement of Undisputed Facts at ¶2 and Response of Wayne
Pritchett to Symons' Statement of Undisputed Material Facts
at ¶2.*  While the plaintiff was incarcerated at SCI-
Rockview, there was a no smoking policy on the blocks but
the inmates were allowed to smoke outside in the yard. *Id.
at ¶3.*  The Department of Corrections had problems

15

enforcing the no smoking policy, and inmates did smoke in the living quarters.  *Id. at* ¶4.

The plaintiff has a viral congenital condition with a high risk of recurrence, regardless of exposure to second hand smoke. *Id. at* ¶8.  The role of second hand smoke and cancers arising in laryngeal papillomatosisis not well studied.  *Id. at* ¶9.  The effects of smoking on cancer development are measured in years not months. *Id. at* ¶10.

On November 21, 2000, the plaintiff was referred to Dr. Yi Howard Kao for outside consultation regarding his recurring viral papilloma.  *Id. at* ¶11.  Thereafter, Dr. Kao saw the plaintiff on January 19, 2001, March 29, 2001, October 9, 2001, March 17, 2003, April 26, 2004, June 15, 2004, July 1, 2004, October 7, 2004, November 23, 2004 and December 9, 2004.  *Id. at* ¶¶ *12 & 14*.  In the interim, the plaintiff was seen at SCI-Rockview by the medical staff including defendant Symons. *Id. at* ¶*13.*  Dr. Kao surgically removed recurring papilloma on January 19, 2001, June 15, 2004 and November 23, 2004. *Id. at* ¶14.

Sometime after the June 15, 2004 surgery, the plaintiff complained to defendant Symons about his exposure to second hand smoke. *Id. at* ¶15.  The plaintiff believed that second hand smoke was making his condition worse. *Id. at* ¶16.  In September of 2004, the plaintiff asked for single cell status. *Id. at* ¶17.

Over a two to three month period, defendants Symons and Ellers discussed the plaintiff's situation about half a dozen times.  *Id. at* ¶19.

On October 7, 2004, November 23, 2004 and December 9, 2004, Dr. Kao noted in his consultation records that the plaintiff should avoid second hand smoke. *Id. at* ¶24.

Defendant Symons recommended that the plaintiff be transferred to a smoke free institution because smoking seemed to occur in all blocks and assigning the plaintiff to a single cell would not guarantee that he would be removed from exposure to second hand smoke.  *Id. at* ¶29.

Defendant Symons had no authority to transfer the plaintiff to another institution or assign him to another

cell. *Id. at* ¶37.  Dr. Symons, however, could recommend such a transfer or assignment. *Id.*

IV. Discussion.

    A. Eighth Amendment Claims.

    The plaintiff claims that both defendant Ellers and defendant Symons violated his Eighth Amendment right to be free from cruel and unusual punishment.  The plaintiff claims that the defendants were deliberately indifferent to both the risk of serious damage to his future health and to his current serious medical needs by housing him with smoking inmates.

    A claim of cruel and unusual punishment must contain allegations which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Conditions which inflict needless suffering, whether physical or mental, may constitute cruel and unusual punishment. *Tillery v. Owens*, 719 F.Supp. 1256, 1275 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).  Punishment is cruel and unusual only if it is

18

"unusually severe, if there is a strong probability that it is inflicted arbitrarily, if it is substantially rejected by contemporary society, and if there is no reason to believe it serves any penal purpose more effectively than some less severe punishment." *Rhodes v. Robinson*, 612 F.2d 766, 774 (3d Cir. 1979) (quoting *Furman v. Georgia*, 408 U.S. 238, 282 (1972) (Brennan, J., concurring)).

Eighth Amendment claims involve a two prong analysis.  Eighth Amendment claims must satisfy both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992).

In *Helling v. McKinney*, 509 U.S. 25, 35 (1993), the Supreme Court held that an Eighth Amendment claim is stated when it is alleged that prison officials act with deliberate indifference in exposing an inmate to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to the inmate's future health.  To prove such a claim, a prisoner must satisfy both the objective and subjective elements necessary to prove an Eighth

Amendment claim. *Id.*  As to the objective element, the
prisoner must show that he is being exposed to unreasonably
high levels of ETS and that the risk that he complains of
is so grave that it violates contemporary standards of
decency to expose anyone unwillingly to such a risk.  *Id.*
at 35-36.

    In order for the plaintiff to establish an Eighth
Amendment medical claim with respect to his then current
medical needs he must establish that the defendants acted
with deliberate indifference to his serious medical needs.
*Estelle*, *supra,* 429 U.S. at 106.

    The concept of serious medical need has two
components, one relating to the consequences of a failure
to treat and the other relating to the obviousness of those
consequences. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017,
1023 (3d Cir. 1991).  The condition must be such that a
failure to treat can be expected to lead to substantial and
unnecessary suffering, injury or death. *Id.*  Also, the
condition must be one that has been diagnosed by a doctor
as requiring treatment or one that is so obvious that a lay

person would easily recognize the need for a doctor's attention. *Id.*

The defendants do not argue that the plaintiff's papilloma is not a serious medical need sufficient to meet the objective component of an Eighth Amendment violation. However, as to a claim for future injury, defendant Symons contends that the plaintiff can not show that he was exposed to unreasonably high levels of ETS. He argues that there is no evidence of the level of ETS that was present in the plaintiff's cell. He argues that the fact that the plaintiff was transferred to a non-smoking facility negates his ability to establish a future injury claim.

Defendant Symons's assertion that there is no evidence of the level of ETS that was present in the plaintiff's cell is incorrect. The plaintiff testified to the level of ETS in his cell. For example, he testified that afer his June 2004 surgery he was celled with a smoker and because of the smoke he had to go underneath the covers in his cell to breathe, that he suffered shortness of breath, irritation to his throat and difficulty swallowing. *Plaintiff's Dep. at 82.* A reasonable trier of fact could

find that the plaintiff was exposed to unreasonably high levels of ETS and that the risk that he complained of is so grave that it violated contemporary standards of decency to expose anyone unwillingly to such a risk.

The plaintiff testified that he was still subject to ETS at SCI-Fayette. *Pritchett Prel. Inj. Test. at 11*. The plaintiff was subsequently transferred from SCI-Fayette to SCI-Chester, which is a tobacco free facility.  The fact that the plaintiff was transferred may limit his damages but it does not mean that the plaintiff can not present a claim for future damage based on his exposure to ETS while at SCI-Rockview.

Both defendant Symons and defendant Ellers argue that the plaintiff has not established that they were deliberately indifferent to his medical needs.

Mere medical malpractice does not give rise to a violation of the Eighth Amendment.  *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990).  "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician

exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  The Third Circuit has also "found 'deliberate indifference' to exist when the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).  Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.

1979)).  Mere disagreement as to the proper medical
treatment does not support an Eighth Amendment claim.
*Monmouth County Correctional Institutional Inmates v.
Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts,
determining what constitutes deliberate indifference, have
consistently held that mere allegations of malpractice do
not raise issues of constitutional import. . . . Nor does
mere disagreement as to the proper medical treatment
support a claim of an eighth amendment violation."); *White
v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990)(mere
disagreement over proper treatment does not state a claim
upon which relief can be granted).

     Defendant Ellers argues that given that he had
discussions with the plaintiff's unit manager and that he
contacted three different institutions as well as the
Department's Bureau of Health Services in order to locate a
smoke free environment for the plaintiff his conduct was
the antithesis of deliberate indifference.  The actions
that defendant Ellers actually took do not lead to a
reasonable inference of deliberate indifference.  However,
the timing of those actions may lead to such an inference.

According to defendant Ellers, after the plaintiff's June 2004 surgery, Dr. Kao recommended that the plaintiff avoid ETS and during a conversation in July or August of 2004, Defendant Symons and defendant Ellers discussed that recommendation of Dr. Kao. *Defendant Ellers' Statement of Material Facts at ¶¶20 & 27.*  However, the plaintiff was not transferred to another institution until December 14, 2004.  A reasonable trier of fact may find that the delay from the date defendant Ellers became aware of the problem and the date of transfer was reasonable given the investigative actions taken by defendant Ellers in the meantime.  On the other hand, a reasonable trier of fact may find that the delay was unreasonable and amounted to deliberate indifference to the plaintiff's serious medical needs.

Defendant Symons similarly argues that his actions do not lead to an inference of deliberate indifference.  He asserts that he referred the plaintiff to a specialist and that he recommended a transfer to a non-smoking facility. Although defendant Symons referred the plaintiff to a specialist - Dr. Kao, there is evidence that he did not immediately heed Dr. Kao's recommendation that the

plaintiff should not be exposed to ETS.  Defendant Symons
does not argue that in his professional judgment he
disagreed with Dr. Kao's recommendation that the plaintiff
avoid ETS.  Absent a medical disagreement, a failure to
heed a specialist's advice may lead to an inference of
deliberate indifference.

Defendant Symons argues that Dr. Kao first
recommended a smoke free cell a mere 6 days before the
plaintiff's was transferred.  However, there is evidence
that Dr. Kao recommended that the plaintiff avoid ETS after
the plaintiff's June surgery and that during a conversation
in July or August of 2004, Defendant Symons and defendant
Ellers discussed that recommendation of Dr. Kao. *Defendant
Ellers' Statement of Material Facts at ¶¶20 & 27.*
Defendant Symons did not make a formal recommendation to
transfer the plaintiff until November 30, 2004. *Symons Dep.
at 51.*  A reasonable trier or fact may conclude that the
delay between the date defendant Symons became aware of the
problem and the date of his recommendation for a transfer
was reasonable.  However, a reasonable trier of fact may
also find that the delay was unreasonable and amounted to

deliberate indifference to the plaintiff's serious medical needs.

Defendant Ellers argues that the plaintiff has not presented evidence that he was actually subjected to tobacco smoke as opposed to the mere smell of tobacco smoke.  The plaintiff, however, testified that after his June 2004 surgery he was celled with a smoker and because of the smoke he had to go underneath the covers in his cell to breathe, that he suffered shortness of breath, irritation to his throat and difficulty swallowing. *Plaintiff's Dep. at 82.*

Defendant Ellers also argues that the plaintiff has failed to show that he would have known that exposure to ETS may have prolonged the plaintiff's recuperation process.  However, as discussed above, there is evidence that after the plaintiff's June 2004 surgery, Dr. Kao recommended that the plaintiff avoid ETS and that defendant Ellers was aware of that recommendation.  Further, defendant Ellers himself indicates that he believed that he had the responsibility to make accommodations for the plaintiff regarding his complaints that he was being

27

subject to ETS. *Defendant Ellers' Statement of Material Facts at ¶30.*

Both defendant Ellers and defendant Symons contend that the plaintiff has not presented medical or expert testimony sufficient to support his claims.

Defendant Ellers argues that the plaintiff has not presented any medical evidence that exposure to ETS hindered his healing from his June 2004 surgery. However, the plaintiff has presented an expert report from Dr. Kao in which Dr. Kao states his opinion that the plaintiff's condition is aggravated by second hand smoke.

Defendant Symons argues that the plaintiff has failed to proffer any expert testimony that any of his actions or inactions caused or contributed to an actual injury of the plaintiff. Although Dr. Kao does not specifically mention defendant Symons in his report of November 2, 2006, he does give his opinion that the plaintiff's condition is aggravated by second hand smoke. Further, the plaintiff has submitted a supplemental report from Dr. Kao dated August 21, 2007 in which Dr. Kao states:

28

I have reviewed Dr. Srodes' letter of June 24, 2007.  His statement of the period of time during which Mr. Pritchett was exposed to second hand smoke is not accurate.  I agree with Dr. Srodes that dysplasia that Mr. Pritchett exhibited is precancerous.  Most people and probably all doctors would advise patients with "precancerous" conditions to avoid any agents known to be carcinogenic, i.e. second hand tobacco smoke for dysplasia of the vocal cords, just as I advised Mr. Pritchett to do.  It is well documented that prolonged exposure to tobacco smoke has been known to cause laryngeal as well as lung cancer.  Prolonged exposure, i.e. more than two months, as is the case with Mr. Pritchett, can exacerbate dysplasia of the vocal cords.  Although I would agree with Dr. Srodes that 2 months of exposure to second hand smoke probably did not exacerbate dysplasia of Mr. Pritchett's vocal cords, he has been exposed to second hand smoke for several months more than Dr. Srodes appears to be aware.  Mr. Pritchett complained of the exposure for several months prior to my October notation and prescription that he be protected from second hand smoke in a smoke free environment.

In addition, exposure to second hand smoke can impede healing of the vocal cords after surgery.  The opinions expressed are to a reasonable degree of medical certainty.

*Doc. 108.*

Given Dr. Kao's reports, we reject the defendants' arguments that the plaintiff has not presented medical or

expert testimony sufficient to support his Eighth Amendment claims.

In sum, it will be recommended that the defendants not be granted summary judgment on the plaintiff's Eighth Amendment claims.

B. Retaliation Claim.

The plaintiff claims that defendant Ellers had him transferred to SCI-Fayette in retaliation for seeking Z Code status.

Retaliation for the exercise of First Amendment rights is a constitutional violation. *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990)("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983.").

"As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to

the alleged retaliation was constitutionally protected."
*Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001).  Next, a
prisoner-plaintiff must show that he suffered some "adverse
action" at the hand of prison officials. *Id.*  "[A]
prisoner-plaintiff satisfies this requirement by
demonstrating that the action 'was sufficient to deter a
person of ordinary firmness from exercising his
[constitutional] rights.'" *Id.* (quoting *Allah v.
Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

     "Once these two threshold criteria are met, there
remains the question of how a prisoner-plaintiff must go
about proving a causal link between the exercise of his
constitutional rights and the adverse action taken against
him." *Id.*  "In a First Amendment retaliation case, the
plaintiff has the initial burden of showing that his
constitutionally protected conduct was a "substantial" or
"motivating factor" in the relevant decision." *Suppan v.
Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000); *Rauser, supra*,
241 F.3d at 333-34.  "Once the plaintiff carries this
burden, the burden shifts to the defendant to show 'by a
preponderance of the evidence that it would have reached
the same decision even in the absence of the protected

31

conduct.'" *Suppan, supra,* 203 F.3d at 235 (quoting *Mount*

*Healthy, supra*, 429 U.S. at 287); *Rauser, supra*, 241 F.3d

at 333-34.  Prison officials may prevail by proving that

they would have made the same decision absent the protected

conduct for reasons reasonably related to a legitimate

penological interest. *Rauser, supra*, 241 F.3d at 334.


Defendant Ellers argues that the plaintiff has not

established that he acted in retaliation.  We agree.[2]


The plaintiff has not presented evidence from which

a reasonable trier of fact could conclude that defendant

Ellers' transfer of the plaintiff was in retaliation for

the plaintiff's requests for Z Code status.  Although the

plaintiff's requests for Z Code status are undoubtedly what

brought the issue of the plaintiff's exposure to ETS to the

attention of defendant Ellers, there is no evidence that

---

2.  Defendant Ellers appears to misunderstand the basis of the
plaintiff's retaliation claim.  The plaintiff claims that he was
transferred in retaliation for seeking Z Code status not, as
defendant Ellers appears to believe, for filing a grievance against
Ellers or for applying for commutation.  Although defendant Ellers
misunderstands the basis of the plaintiff's retaliation claim, we
agree with defendant Ellers that the plaintiff has failed to
establish that he acted in retaliation for the plaintiff exercising
his constitutional rights.

defendants Ellers transferred the plaintiff out of
retaliation.  Rather, the undisputed evidence in connection
with defendant Ellers' motion for summary judgment
indicates that defendant Ellers transferred the plaintiff
in an attempt to eliminate or limit his exposure to ETS.
Accordingly, defendant Ellers is entitled to summary
judgment on the plaintiff's retaliation claim.

          C. ADA Claim.

          The plaintiff claims that defendant Ellers violated
the ADA.

          Title II of the ADA provides that "no qualified
individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied
the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by any
such entity."  42 U.S.C. § 12132 (2003).

          Defendant Ellers contends that he is entitled to
summary judgment on the plaintiff's ADA claim because the
plaintiff has not established that he had disability.

Although defendant Ellers admits that the plaintiff has a raspy voice, he asserts that there is no evidence that the plaintiff's vocal abilities are substantially limited. Given the plaintiff's testimony regarding his difficulty speaking, *see Pritchett Dep. at 110,* we conclude that defendant Ellers is not entitled to summary judgment on the plaintiff's ADA claim on the basis that there is no evidence that the plaintiff's vocal abilities are substantially limited.

V. Recommendations.

Based on the foregoing, it is recommended that the motion (doc. 93) for summary judgment filed by defendant Symons be denied.  It is recommended that the motion (doc. 73) for summary judgment filed by defendant Ellers be granted in part and denied in part.  It is recommended that defendant Ellers' motion be denied as to the plaintiff's Eighth Amendment and ADA claims.  It is recommended that defendant Ellers' motion be granted as to the plaintiff's

retaliation claim.  Finally, it is recommended that the case be listed for trial on the remaining claims.


                                          */s/ J. Andrew Smyser*
                                          J. Andrew Smyser
                                          Magistrate Judge

Dated:  October 3, 2007.